So we'll next hear argument in United States v. Rausini. You may proceed. Thank you, Your Honor. May it please the Court, my name is Catherine Alfieri, and I represent the appellant Walter Rausini in this case. In this case, the facts are relatively straightforward. The government entered into a post-conviction cooperation agreement with the appellant in 2000. They made express promises in that cooperation agreement to refrain from making a specific sentence reduction. They – they – well, let me start at the beginning. They agreed to file a 35B motion at the completion of Mr. Rausini's cooperation. They agreed to set forth to the district court the extent and significance of that cooperation, and they agreed to refrain from making a specific sentence reduction recommendation to the court. It is the appellant's position that the government breached two of the three of their obligations, and nearly breached the third to file a 35B motion, but was saved by the district court, which compelled them to file a 35B motion, and that they breached those two conditions by making a specific sentence reduction recommendation when the cooperation agreement expressly prohibited them from doing so, and failing to set forth to the district court the full extent and significance of Mr. Rausini's cooperation. The record below reveals that there is a whole host of items that the government never brought to the district court's attention. Thing – But there is the argument that this particular judge, Judge Elston, had quite a bit of that background anyway, because she had presided over that – the trial of those other two people, right? Yeah. And I believe that – that the court is referencing the government's claim that the breaches were immaterial. And – Well, either that or, you know, non-prejudicial, something like that. Well, I would submit to the court that when the government breaches, one of the – one of the – one of the issues that was not briefed in this case, and which I – which probably should have been at least in a footnote from my perspective, was because the government argued that the breaches were immaterial. The government did not argue that there was no prejudice, because under this court's opinions, U.S. v. Johnson and Mondragon and a whole host of other cases, when the government is the breacher of a plea or cooperation agreement, harmless error rule does not apply. And we would contend – Well, I mean, that's true of plea agreements. You know, I don't think there's any case that says it's true of cooperation agreements. I think – I think there could be – might be a difference. Yeah. I believe that – that it would be our position, Your Honor, that the – that since plea agreements and cooperation agreements under Santabello are so analogous that the same standard should apply. But even if this court were to consider that that information was before the court simply because the defendant presented a whole host of information and did make those points, so they are in the record because the defendant indeed brought them to the court's attention, there is still a whole host of other material that was not presented. Well, so let me just ask you, if we agreed with your position under Santabello that the making of a recommendation would require a remand because that was a breach, and then we would have the second issue about the scope of the recommendation by the government, here's – here's what concerns me is how you get into the line drawing contest. Let's just say we didn't have the making of a recommendation as an issue here, and all we had was failure to present as much information in – to the court. And in effect, as Judge Hashimich says, the court here has all the information in front of her. How do we get – how does the appeals court judge this? Because inevitably there could be 20 more things that the government didn't say, and they may be relevant or irrelevant or totally immaterial. So we're kind of in this, well, the government said 10 things, and then there's 12 more that you think they should have said, and then there's 15 more they didn't say at all. Well, I think in this case the record – the court can look to the record below. And one of the things that happened in this case is that there was a six-year gap between the original cooperation agreement and U.S. Attorney Mueller, who handled the cooperation of Mr. Rossini, and the 2006 attorneys and the agents that handled that part of things on the 35B motion. And so it is our position that when this Court looks at interpreting a cooperation agreement, it's what was the defendant's reasonable expectation? What was – what was reasonable at the time of execution? And he certainly would have the reasonable expectation that the government would marshal its resources to be able to obtain all of the relevant material. What would it have to do? It would have to make a good-faith, due-diligence effort to talk to the prior attorneys, to talk to the prior FBI agents who handled Mr. Rossini's cooperation, to obtain the investigative materials, to obtain all the 302s. There is no indicia in the record below that the 2006 attorneys did that. Further, on the record below, this chasm between the 2000 attorneys and the 2006 attorneys, there is some evidence this Court can look to to say not speculatively – speculatively, but most definitely there is additional evidence that should have been brought before the district court. First, we know that these two sets of attorneys did not share information and evidence about this case. How do we know that? We know that because they didn't even know that a cooperation – the 2006 attorneys did not know that U.S. Attorney Mueller in 2000 even entered into a cooperation agreement with the defendant, and until the document was produced by Mr. Rossini had no information that that was the case. What else do we know? We know that the government did not know – the 2006 attorneys did not know that Mr. Mueller made an ex parte motion before the Court to obtain counsel for Mr. Rossini, didn't know that Mr. Rossini was moved from Leavenworth to Dublin at Mr. Mueller's request, didn't know that – that Mr. Mueller made representations in a settlement conference statements extolling the truthfulness of Mr. Rossini's testimony, didn't know that the government indicated in open court in a co-defendant case before U.S. District Court Judge Patel that they would bring additional charges against co-defendants based on the truthfulness and additional information that Mr. Rossini provided, and just didn't know a whole host of things that is in the record. We also know that these two sets of attorneys held vastly different views, not just about the extent but the significance of that cooperation. We know that the 2006 attorneys thought that Mr. Rossini's cooperation was so worthless and that he would be such a terrible witness that it didn't even merit bringing a 35B motion. We also know that Mr. Mueller informally indicated that he certainly supported a 35B motion. That's also in the record. And we also know that the 2006 attorneys vilified and condemned Mr. Rossini as a liar and that in 2000, U.S. Attorney Mueller was well aware of Mr. Rossini's disavowal of the underlying facts of this case and entered into the cooperation agreement knowing those facts, and then subsequently extolled his version of events in pleadings before the district court where he attested to their veracity and truthfulness. And I think on this record, given that it appears that between the 2000 set of attorneys and agents and the 2006 set of attorneys handling the 35B portion of this case, that gives this Court plenty to rely upon to indicate that there is a wealth of information that should have been brought and that it's not speculative. What's your response to the question? Counsel, my question is how would things have been different if there had been a hearing where Mueller or others testified? Well, I think that, you know, we don't know that particular – I can't specifically answer that. I can tell you that Mr. Mueller certainly could have indicated – would have laid out the sequence of events from October 2000 until his departure as the U.S. Attorney and Mr. – the course of Mr. Rossini's cooperation. We would have known, you know, things that I don't know that aren't on the record, Your Honor. One of the difficulties with cooperation is that, you know, one of the things the government says is that it's in front of the – you know, the district court had all the information. Well, the district court doesn't preside over cooperation activities. FBI agents and U.S. attorneys do. And I don't have access to that. But I do know that there was some reason that U.S. Attorney Mueller stated in his settlement conference statement that all of Mr. Rossini's cooperation was verified and corroborated by all of the direct circumstantial and testimonial evidence in the case. I think that Mr. Rossini was entitled to have those U.S. attorneys, their input in the 35B proceeding, entitled to have the FBI agents who investigated that material. Yeah, but what's your answer to the government's position that you never requested an evidentiary hearing in the trial court? Well, I think that there is a concession that there was a request, but that it was somewhat deferential in tone. And I would concede that, reading the record, that there was several requests for a hearing. There was a request to subpoena Mr. Mueller particularly. And those requests, although the – No, but that request was in, you know, in the context of the sentence where the counsel says, not yourself, but Mr. Rossini's counsel at the time says, if the court believes that an evidentiary hearing would be helpful. Right. And it's in those terms. So in other words, you're telling – you're saying to the court, it's up to you to decide whether you want to have an evidentiary hearing. You didn't request one. Well, Mr. Rossini himself, one of the blessings of his prolific nature in this case, is that he requested a hearing. The question is, is this preserved for appeal? And I would suggest that it is. Mr. Rossini requested a hearing at several points. That's in the record. And defense counsel did request a hearing, albeit in a deferential tone. And that's the state of the record, Your Honor. Thank you. Thank you. May it please the court, good morning. My name is Lori Gray. I represent the United States. Defendant raises two issues on appeal. Neither argument justifies reversing the district court. To begin with, this court has no jurisdiction over defendant's claim unless defendant proves that the government breached the plea agreement. And so that is the argument that I will address first. The record demonstrates that the district court was fully apprised as to both the extent and the significance of defendant's cooperation as required by the post-conviction cooperation agreement, and thus there was no breach. With regard to the extent of the cooperation, I think it's important to look at the timing of the motions. Well, don't you virtually admit that there was a breach of the cooperation agreement in your brief? I mean, you say it's immaterial, but still you're saying you admit there's a breach. I don't believe there was. It's a recommendation, correct? And I would argue, Your Honor, that looking at the record, that that recommendation was not a breach. And the reason it was not a breach, if the agreement is to make no recommendation and then a recommendation is made, how is that not a breach? Well, looking at the actual post-conviction cooperation agreement, if you look at that, which is at excerpts of record 34 through 36, I would submit to the court that the promise, the bargain for promise, is that the government in turn agrees to file the motion under Rule 35. That's what's the bargain for promise. The amount was not part of the bargain for promise. That was simply you understand. I would argue that in the record, further evidence that that was not a bargain for enforceable promise is that at the March 3, 2006 hearing, where the court ordered the government to file the Rule 35 motion, and this is at excerpt of record 115, the court – Could I just maybe step back? Certainly. The court says in the agreement, the government says it will not recommend any specific reduction in your sentence. And that's – it begins that sentence, Your Honor. You understand. Right. And my argument is the previous paragraph says the government in turn agrees that's the bargain for agreement, that the government will file – So now – this is a little bit different than I understood your brief, so I think it's important. So your argument then is that because the word agree wasn't made here, but it was rather you understand X and the government will not recommend any specific reduction, that that should have just been his understanding, not his recipient – not his receipt of a promise. Yes. But I have something stronger perhaps, Your Honor, that answers that. I hope so. And that's the court, the district court's order, which is at excerpt of record 115. That's at the motions hearing where the court directs the government to file the Rule 35 motion. The district court says I'm ordering you to file the motion. I'm ordering you to do that because I believe that a commitment has been made by the government to Mr. Rossini. It needs to be honored. Additionally, the court goes on to state, to make the package complete, I want to have each of your memos on what the appropriate sentencing decision should be in light of the Rule 35. So the district court's directing the government to file. Just a minute. Why don't you say, well, Judge Olson, you know, our cooperation agreement forbids us from doing that. Because the government's position was that it wasn't a bargain for a promise, and with that, Your Honor, the defendant never said it. The defendant, who has been so clear on what the government's promises and obligations, was in court and didn't say, wait a minute, the cooperation agreement prohibits that. No greater than the defendant's. No, I'm saying at that point, the government did not believe that that was a breach to recommend the amount. It really doesn't matter what the district judge said if, in fact, it were a breach. I mean, in other words, the district judge is looking at a lot of cases, a lot of cooperation agreements. So if you have an obligation under the agreement, you have to agree that you would have to meet it, whether or not the district ended it. Right. If there was an obligation. The reason I bring that up, Your Honor, is simply to show that the court itself, who had been with this case for 11 years and, as indicated, was intimately familiar, did not believe that, I think by virtue of the fact, ordered the government to submit what they thought the sentencing was worth. The court did have everything before it, and the defense, looking at the timing, the defendant was first debriefed in October of 2000. The post-conviction agreement was signed November 8th of 2000. One year later, what kicked this process off was November 8th, 2001, defendant filed a status memo outlining his cooperation, and he attached to that status memo the FBI 302s that summarized the interview.  And we get up to 2006, when his newest attorney begins filing motions again. And, again, it's important to note that, as part of that motion, he filed the November 8th post-cooperation agreement. He filed the November 13th government letter to defendants' counsel, saying that Rossini was a witness. There was a December 11th settlement conference statement, defendant's declaration, co-defendant's declaration that he pled guilty because he was told Rossini was going to testify, and the declaration of defendant's trial counsel that he thought the co-defendants pled guilty because of Rossini's cooperation. So by the time, Your Honors, the government was able to do that. Could I step back? If we were to disagree with your reading of the cooperation agreement and to say that the government had an obligation not to make a recommendation, wouldn't we need to remand under Santabello? If the government files that there was a breach, finds that there was a breach, I do think you do need to remand, yes. Correct. But on this record, for the reason I've stated. Is the government's position that Santabello governs cooperation agreements as well as plea agreements? In this case, on these facts, Your Honor, yes, I do believe it applies. Just to finish that point that I was making, which is. Let me just then move to where you are. If we were to remand, if we were to find that it fell under the Santabello where it doesn't matter whether it's material or immaterial and we remanded because there was a breach, and I recognize that the court gave two, not one, but would we then still need to reach the second issue you're talking about, and that is whether you basically put all your cards on the table in terms of the cooperation? I don't think so. I don't think so. Well, I think with regard to that, that there is no breach because of the extent of the documents. The court had everything before it. It didn't matter. By the time the defendant filed its motion, there was nothing more to provide. Let me ask another hypothetical question. Sure. If, as Judge McEwen says, we were to disagree with your position and find that the government breached what we would characterize as a promise not to make a recommendation, and you agree that Santabello applies, does that mean we'd have to remand to a different district judge? I don't believe so. Is that a Santabello requirement? Well, in this particular case, I mean, this is the judge that's familiar with. . . That's exactly the reason why Santabello says it has to go to a different judge, isn't it? I guess I'm not sure on that, Your Honor. I'm not sure on that. All right. But taking up the point of the question that you'd ask defense counsel about what the result would be if it came back to this judge, the judge made very clear and cited two of the pleadings that had been filed as far as I think that there was some consequence of this defendant agreeing to testify and for that reason co-defendants pled. The court made it very clear that this was a murderer who had pled to solicitation, who had first faced the death penalty, then had faced a life sentence, then had been statutorily maxed out at 20 years. And because of his conduct and everything that had gone on in the case, her evaluation based on this full and complete record was that two years was significant. And so she honored the Rule 35 motion, and she did based on all the evidence before her make that two-year sentence. And I think that there's nothing further to be gained by a remand in this particular case. If there are any other questions, I'm happy to answer them. If not, I would submit and ask that the court do affirm the district court's decision. Thank you. We have a minute for rebuttal. Thank you. Just briefly, government counsel indicated that the defendant never objected to the breach of the plea agreement in terms of the sentence reduction, and I would submit that the defendant never objected in the sense that when Judge Elston says, I want both of you to make a recommendation. At that point, counsel said nothing. Counsel said nothing, and I would submit that counsel also didn't make a specific recommendation when he filed his motion. There was no request for a specific tell me how many years. That's number one. Number two. Excuse me. The clock is wrong. It should have been at one minute, please. Can you possibly limit that? Otherwise, we're going to all be a little bit confused. Okay. And the defendant specifically in the response to the government's motion for 35B, the compelled, somewhat grudging motion, he states, a sentence reduction recommendation of one year is a breach of the written cooperation agreements because the government was supposed to set forth the extent and significance of my cooperation and not recommend any specific reduction. That's at ER 187, which is in the defendant's declaration and that the his trial counsel specifically adopted into the motion, and I would submit that that would suffice as an objection. I would also want to just mention one other thing, which is that there are ten other individuals in this case that Mr. Rossini provided information about. That's in the 302 that actually Ms. Gray submitted under seal recently to the Court, and there is no information. There's no investigative material. There's nothing about what happened to that material, how it was carried out. There's no witnesses. There's nothing in the record as to those ten. And I would ask the Court to grant the remand as to both issues, both the extent and significance, and find a breach on the specific sentence reduction. Thank you. Thank you. Thank you both counsel for your arguments. The case of United States v. Rossini is submitted.
judges: Tashima, McKeown, Gould